**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

KENNETH ROBINSON                                                                                         PLAINTIFF

v.                                            No. 3:14CV00267 JLH

NUCOR CORPORATION d/b/a/ NUCOR STEEL                                         DEFENDANT

## OPINION AND ORDER

Kenneth Robinson commenced this action against Nucor Corporation, d/b/a Nucor Steel, alleging race discrimination and retaliation in violation of 42 U.S.C. § 1981 and the Arkansas Civil Rights Act of 1993, Ark. Code Ann. § 16-123-101 *et seq*. Robinson alleges that Nucor violated the law when it demoted him from his position of shift supervisor and disciplined him on several occasions between 2012 and 2014. Nucor has filed a motion for summary judgment, and Robinson has responded. For the following reasons, Nucor's motion for summary judgment is granted.

**I.**

Robinson, an African-American, has worked for Nucor since 1992. He began as a crane operator in the shipping department and was promoted to a shift supervisor in the same department in 2001. Nucor has four crews (A, B, C, and D crews) that work in the shipping department, each with its own supervisor. Robinson was initially assigned as the B-crew supervisor. When Robinson was promoted to shift supervisor, Steve Pienaar was the manager of the shipping department and David Chase was the general manager at Nucor. A year later, in 2002, Sam Commella became the general manager at Nucor, and in 2005, Robert Byrd became Robinson's direct supervisor as manager of the shipping department.

While Robinson was supervisor of the B crew, he underwent a leadership assessment. Nucor hired an industrial psychologist to conduct the assessment for developmental purposes. Although not all supervisors underwent the assessment, Robinson was not the only supervisor to be assessed.

Robinson's assessment noted areas of strength as well as weakness. For example, the assessment described Robinson as calm, level-headed, composed, and resilient. But it also found that Robinson struggled to hold crew members accountable successfully. Overall, the assessment concluded that Robinson could effectively enforce safety policies but that he had a tendency to micromanage and miss opportunities to build teamwork. Robinson would later complain that Byrd never reviewed the assessment with him.

In 2009, issues with Robinson's crew began to percolate. Commella and Byrd became aware that members of Robinson's crew did not trust or respect him. A 2009 annual peer review of Robinson reflected that a large majority of his peers rated him as "Sometimes"[1] earning the respect of others. The peer review also reflected that half of his peers rated him as "Sometimes" demonstrating leadership. Byrd evaluated Robinson on the peer review and noted such things as Robinson's "micromanagement approach to leadership is counterproductive to team building," Robinson "has obvious 'favorites' on his crew," Robinson "[f]ails to gain respect and trust of others," and Robinson "could put more emphasis on holding the people that work with him more accountable." Commella testified that Robinson had leadership issues prior to 2009, but they "really started to percolate systemically around [2009]."

In December 2009, Byrd decided to move Robinson from the B crew to the C crew. Byrd wanted to give Robinson a fresh start with a new crew, hoping to resolve the issues that had cropped up with B crew. But eventually, the same issues Robinson experienced with B crew recurred with C crew. In July 2012, Robinson attempted to address some of these issues in a meeting with his crew. Robinson asked Doug Johnson, another supervisor, to attend and observe the meeting. After

---

[1] There are six categories on the peer review: Never, Almost Never, Sometimes, Often, and Very Often. A rating of "Sometimes" means that performance is acceptable.

2

the meeting, Johnson met with Byrd and discussed the meeting. Byrd asked Johnson to follow up with Robinson's crew members to get more information about some of the issues. Johnson's notes from following up with the crew reflect that some members of the crew did not trust or respect Robinson and that the crew lacked harmony.

Based on the meeting and Johnson's follow-up, Byrd took disciplinary action against Robinson. Byrd served a written disciplinary notice on Robinson and warned him that he needed to meet the expectations of a Nucor supervisor. The written notice outlined Robinson's leadership failures, citing Robinson's failure to hold his crew members accountable, effectively communicate, and instill teamwork and team unity "for a period of greater than seven months." Robinson signed the written disciplinary notice. After receiving the written notice, Robinson met with Commella to discuss the discipline. At the meeting, Robinson did not disagree with the issues cited but thought that the time-frame of seven months was inaccurate. Commella told Robinson that he was more concerned about the substance of the issues than the time-frame. Commella offered Robinson resources and help, but Robinson declined them.

Robinson's issues with his crew became known to other workers at Nucor. Don Wilson, Doug Johnson, Chris Booker, Tommy O'Malley, and Steve Bennett all testified that Robinson had leadership issues with his crew. In a further step to assist Robinson with the crew issues, Byrd assigned Bennett, an experienced and well-respected crewman, to Robinson's crew. Byrd intended Bennett to provide Robinson with helpful feedback from his observations of and discussions with the crew. Nevertheless, the issues persisted.

In late September 2012, Robinson and Byrd met with members of Robinson's crew to discuss continuing complaints of Robinson's leadership. The notes from the meeting show that the crew lacked respect and trust for Robinson and was upset that Robinson did not address issues as

they came up. This meeting precipitated another meeting between Commella and Robinson at the beginning of October 2012, in which Commella told Robinson that he would be demoted if he did not show improvement within three months.

In December 2012, Robinson underwent his annual peer review. The peer review indicated that the widespread discord within his crew continued. A majority of his crew gave him low ratings in the categories of dealing with people, respect of others, and leadership.[2] Also, after the October meeting with Commella, Robinson failed to take proper corrective action against a crew member on two separate occasions. In January 2013, Commella decided to demote Robinson from a shift supervisor to a port crane operator. Robinson's written demotion noted that "[o]ver the course of the past year, the performance, morale, teamwork, communication and accountability of [Robinson's] crew has been on a steady decline." The demotion also cited Robinson's leadership failures and the resources and clear expectations provided to Robinson.

Robinson appealed his demotion, claiming that he was discriminated against by Byrd. In a meeting with Kellie Crain, Nucor's Human Resource supervisor, and Commella, Robinson stated that Byrd discriminated against him based on his race. Robinson cited things such as Byrd not reviewing the leadership assessment with him, Byrd's lack of hiring or promoting African-Americans, and Byrd singling him out for discipline and extra scrutiny. Nucor's investigation did not uncover any evidence that Robinson was subjected to discriminatory treatment.

Between 2012 and 2014, Robinson violated Nucor's safety policies on four occasions, three

---

[2] Of the 15 peer evaluators, 1 rated Robinson as "Never" effectively dealing with people or earning the respect of others, 6 rated Robinson as "Almost Never" effectively dealing with people, and 7 rated Robinson as "Almost Never" earning the respect of others. In the leadership categories, 4 rated Robinson as "Almost Never" setting direction for the group and having an assertive presence, 6 rated Robinson as "Almost Never" able to influence others and show good judgment, and between 4 and 6 chose a rating of "Sometimes" in the leadership categories.

of which resulted in disciplinary action. In all three incidents, Robinson admitted to engaging in the conduct. He was disciplined for the infractions but was not demoted. One of the infractions resulted in a five-day suspension. Two others produced written warnings. Robinson continues to work at Nucor as a port crane operator.

## II.

A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Id*. "There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson*, 643 F.3d at 1043 (citations omitted).

Local Rule 56.1 provides that a party moving for summary judgment must annex to the motion a separate, short and concise statement of the material facts as to which it contends there is no genuine issue to be tried.  If the nonmoving party opposes the motion, it must file, in addition to a response and brief, a separate, short and concise statement of the material facts as to which it contends a genuine issue exists to be tried.  All material facts set forth in the statement filed by the moving party are deemed admitted unless controverted by the statement filed by the nonmoving party.  Here, Nucor filed a statement of facts in support of its motion for summary judgment as required by Local Rule 56.1.  Robinson filed a response and brief but did not file a separate, short and concise statement of the material facts as to which he contends a genuine issue exists to be tried.  Since Robinson did not controvert the material facts set forth in the statement filed by Nucor, those statements are deemed admitted.

### III.

Robinson alleges that Nucor violated 42 U.S.C. § 1981 and the Arkansas Civil Rights Act when it demoted him from shift supervisor to port crane operator.  According to Robinson, Nucor demoted him for racially discriminatory reasons.  Claims alleging violations of both section 1981 and the Arkansas Civil Rights Act are analyzed jointly.  *Davis v. Jefferson Hosp. Ass'n*, 685 F.3d 675, 681 (8th Cir. 2012).

Robinson can survive summary judgment on his race-discrimination claim by presenting direct evidence of discrimination or by creating an inference of discrimination under the *McDonnell Douglas* framework.  *See Russell v. City of Kansas City*, 414 F.3d 863, 866 (8th Cir. 2005).  Robinson does not offer any direct evidence of discrimination, so the Court analyzes his claim under *McDonnell Douglas*.  *See Roxas v. Presentation Coll.*, 90 F.3d 310, 315 (8th Cir. 1996) (noting that *McDonnell Douglas* applies to cases arising under section 1981).  Under *McDonnell Douglas*,

Robinson must present a prima facie case of intentional discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25, 36 L. Ed. 2d 668 (1973). Robinson's burden at this stage "is not onerous." *See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54, 101 S. Ct. 1089, 1093-94, 67 L. Ed. 2d 207 (1981). If Robinson presents a prima facie case, Nucor must then articulate a legitimate, nondiscriminatory reason for the action it took. *See McDonnell Douglas*, 411 U.S. at 802-03, 93 S. Ct. at 1824-25. If Nucor does so, Robinson must show that the proffered reason is pretext for unlawful discrimination. *Id.* at 804, 93 S. Ct. at 1825.

To establish a prima facie case of racial discrimination, Robinson must show that: (1) he was a member of a protected group; (2) he was meeting Nucor's legitimate expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees who are not members of his race were treated differently. *See Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000). Nucor argues that Robinson cannot establish a prima facie case because he cannot show that he was meeting Nucor's legitimate expectations or that similarly situated employees of another race were treated differently. Furthermore, Nucor contends that even if Robinson could establish a prima facie case of discrimination, it has presented a legitimate, nondiscriminatory reason for his demotion, and he cannot establish pretext.

Robinson contends that he was objectively qualified[3] for the position of shift supervisor. Robinson points generally to the testimony of two employees at Nucor as well as his own testimony to establish his objective qualifications for the position. He offers no specific evidence, though, that

---

[3] The Eighth Circuit has used the "objectively qualified" language in place of the "meeting legitimate expectations" language. *See, e.g., Legrand v. Trustees of the Univ. of Ark. at Pine Bluff*, 821 F.2d 478, 481 (8th Cir. 1987); *compare Box v. Principi*, 442 F.3d 692, 696 (8th Cir. 2006) (articulating plaintiff's burden under prong two as "she was meeting the legitimate expectations of her employer"); *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 850 (8th Cir. 2005) (articulating plaintiff's burden under prong two as "she was qualified for her position").

he was meeting Nucor's legitimate expectations. Moreover, Nucor's legitimate expectations are best measured by its own materials used to explain expectations and evaluate performance. Performance evaluations can serve as a measurement of whether an employee is meeting the legitimate expectations of his employer. *See Ziegler v. Beverly Enterprises-Minnesota, Inc.*, 133 F.3d 671, 675 (8th Cir. 1998).

Robinson's annual performance evaluations (peer reviews) reflected consistent deficiencies in leadership and people skills. Robinson stresses that such deficiencies are not "objective" measurements justifying Nucor's decision to demote him. To be "objective," Robinson suggests that the measurement must be based on numbers or something on which no one can disagree. This misses the mark. There is no requirement that the performance be evaluated only with metrics that meet the definition proposed by Robinson. *See, e.g., Ziegler*, 133 F.3d at 675 (explaining that employer may legitimately place equal or greater importance on leadership and people skills than on other skills required for the position). Robinson's performance reviews, his reassignment to C crew, the assignment of Bennett to his crew, and his meetings with Commella, all demonstrate that he was not meeting Nucor's legitimate expectations. Robinson cannot establish a prima facie case of racial discrimination. By the same token, he cannot establish that Nucor's reason for demoting him was a pretext for racial discrimination.

## IV.

Robinson also alleges that Nucor retaliated against him in violation section 1981 and the Arkansas Civil Rights Act. Robinson alleges Nucor retaliated against him by (1) demoting him after he complained about the leadership assessment and (2) disciplining and investigating him after he filed a charge of discrimination with the EEOC. "To overcome summary judgment on a retaliation claim under ACRA, a plaintiff must make the same showing as is required on an analogous claim

under Title VII." *Wallace v. Sparks Health Sys.*, 415 F.3d 853, 861 (8th Cir. 2005).  To establish a prima facie case of retaliation under Title VII, a plaintiff must show the following: (1) he engaged in a protected activity; (2) he suffered an adverse employment action; and (3) a causal connection between the protected activity and the adverse employment action.  *Id.* at 858.  The Supreme Court has clarified that an adverse employment action is one that a reasonable employee would have found materially adverse—it need not be an ultimate employment decision.  *Burlington N. Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67, 126 S. Ct. 2405, 2415, 165 L. Ed. 2d 345 (2006).  Robinson must establish that his protected activity was a but-for cause of the alleged adverse action by Nucor.  *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534, 186 L. Ed. 2d 503 (2013).

On Robinson's allegation of retaliation based on the leadership assessment, Nucor argues that Robinson cannot show that he engaged in protected activity.  Robinson argues that he engaged in protected activity by opposing the use of the leadership assessment because "at least one Circuit Court has held that psychologist test[s] may violate the ADA."  The Court need not determine whether opposing Nucor's use of the leadership assessment is protected activity because Robinson testified that he complained only about Byrd not reviewing the leadership assessment with him.  Robinson presents no evidence that he protested the assessment as unlawful.  Robinson cannot establish a prima facie case of retaliation on his first basis because he has not shown that he engaged in protected activity.

On Robinson's second allegation of retaliation, Nucor argues that Robinson cannot establish a prima facie case because he admitted that he violated Nucor's safety policies.  Robinson agrees that "[s]ome courts have held precisely that."  Nonetheless, Robinson argues that his admissions of fault should not end the inquiry because he was disciplined differently from others for similar infractions.  Robinson's retaliation claim centers on his four safety infractions between 2012 and

2014. The Court will address Robinson's disciplinary actions *seriatim*.

Robinson first alleges that Nucor retaliated against him when it disciplined him for causing a piece of equipment that he was operating to hit "end stops." Robinson received a written disciplinary action but testified that he did not believe that the disciplinary action itself was retaliatory. Instead, he considered the tone and manner in which the write-up was worded as retaliatory. Robinson does not describe how the tone or wording of the disciplinary action was harmful. Without more, the tone and wording of a written disciplinary action amount only to a trivial harm and not a materially adverse employment action. *See White*, 548 U.S. at 68, 126 S. Ct. at 2415. Robinson has not shown that this action would dissuade a reasonable employee from complaining of discrimination. *See id.*

Next, Robinson alleges that Nucor retaliated against him when it continued to investigate an incident in which he was involved even after he gave a statement. Robinson was not disciplined for the incident. Like the above claim, this action is not materially adverse, so Robinson has failed to present a prima facie case of retaliation.

Robinson also alleges that Nucor retaliated against him when it suspended him for five days after he worked on a rail car without following the proper safety procedures. Robinson says that Nucor did not evenhandedly punish the violation. Robinson points to a Nucor supervisor and manager who purportedly committed the same safety infraction while inspecting a rail car but were not disciplined. Although Robinson satisfies the protected-activity prong and the adverse-employment-action prong, he does not present sufficient evidence showing a causal connection. Robinson was disciplined in October 2013, and he engaged in the protected activity in June or July of 2013. His only evidence of a causal connection is a temporal connection of more than three months, which is insufficient. *See Sisk v. Picture People, Inc.*, 669 F.3d 896, 900-01 (8th Cir. 2012)

(holding that on its own, only a very close temporal connection between the protected activity and the adverse employment action will present a genuine factual issue on retaliation, and although the court has drawn no definitive line, more than two months is too long).  Robinson has not shown the requisite causal connection.

Finally, Robinson alleges Nucor retaliated against him when it disciplined him in September 2014 for dropping a large steel coil while operating a crane.  Robinson presents no evidence of causal connection other than its temporal relationship with the EEOC charge.  For this reason, Robinson has failed to present the requisite causal connection for this claim.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is GRANTED.  Document #27.

IT IS SO ORDERED this 29th day of September, 2016.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE